**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LOUIE SEDILLO**,

     Plaintiff,

vs.                                                             **No. CV 04-380 JH/WDS**

**ROBERT RAMIREZ,**
**LAURA CHAVEZ**,

     Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**


**BACKGROUND**

**THIS MATTER** comes before the Court on the parties' stipulated facts, *see* Doc. 190 at 3-4; on the Defendants' Proposed Findings of Fact and Conclusions of Law, *see* Doc. 196[1]; and after a bench trial held on October 17, 2011.  Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court sets forth its Findings of Fact, Conclusions of Law, and its decision.

Pro se Plaintiff Louie Sedillo has sued  his former probation officer, Defendant Robert Ramirez, and Ramirez's supervisor, Defendant Laura Barr Chavez, under 42 U.S.C. § 1983 for alleged violation of the Establishment Clause and for allegedly chilling his right to practice his religion[2].  Sedillo put forth no evidence establishing that the Church of Satan is a recognized,

---

[1]  Sedillo did not submit proposed findings and conclusions because he stated he did not understand how to fashion such a document.  Based on his trial testimony, his prior filings, and his cross-examination of the Defendants at trial, however, the Court is aware of what Sedillo's proposed findings and conclusions would have been, had he filed them, and has considered Sedillo's factual and legal theories in making the Court's findings and conclusions.

[2]  The First Amendment to the U.S. Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The first part of this provision is known as the Establishment Clause, and the second part is known as the Free Exercise Clause.

protected religion, thus the particular philosophy of atheistic satanism that Sedillo apparently embraces may not be a "religion" protected by the Free Exercise Clause but, rather, a purely secular, atheistic philosophy devoid of religious connotation.  *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.*  450 U.S. 707, 713-714 (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion."); *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) (noting that free-exercise claims "must be rooted in religious belief," not in "purely secular considerations" or "philosophical and personal" choices); *Davis v. Beason*, 133 U.S. 333, (1890) ("The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will.  It is often confounded with the *cultus* or form of worship of a particular sect, but is distinguishable from the latter.  The first amendment to the constitution, in declaring that congress shall make no law respecting the establishment of religion or forbidding the free exercise thereof, was intended to allow every one under the jurisdiction of the United States to entertain such notions respecting his relations to his Maker and the duties they impose as may be approved by his judgment and conscience, and to exhibit his sentiments in such form of worship as he may think proper, not injurious to the equal rights of others, and to prohibit legislation for the support of any religious tenets, or the modes of worship of any sect."), *abrogation on other grounds noted in Romer v. Evans*, 517 U.S. 620 (1996);  *United States v. Meyers*,  95 F.3d 1475, 1482 (10th Cir. 1996) (noting that, "to state a prima facie free exercise claim," the plaintiff must demonstrate that "governmental action must (1) substantially burden, (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held by the plaintiff"); Black's Law Dictionary 1292 (6th ed.1990) (religion "in its broadest sense includes all forms of belief in the existence of superior beings exercising power over human beings . . ."). *But see Torcaso v. Watkins*,

367 U.S. 488, 495 n.11 (1961) (noting that, under the Establishment Clause, government cannot "aid those religions based on a belief in the existence of God as against those religions founded on different beliefs" and stating in dicta that, "[a]mong religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism and others"). Thus, besides analyzing Sedillo's Establishment-clause claim, the Court has analyzed Sedillo's harassment claim under the free-speech clause of the First Amendment, instead of under the free-exercise clause. The Court's analysis and conclusions would still apply, however, even if the particular type of satanism that Sedillo apparently embraces was protected by the Free Exercise Clause.

Because the Court finds that Sedillo's allegations that Ramirez "preached" to him about christianity and attempted to proselytize him during their probation meetings in 2003, and harassed him regarding Sedillo listening to satanic music and wearing a satanist tee-shirt are not substantiated, the Court concludes that judgment should be granted in favor of Ramirez on Sedillo's claims brought pursuant to 42 U.S.C. § 1983. And because the Court finds that Sedillo's allegations that probation-office supervisor Laura Barr Chavez knew that Sedillo was a satanist, and knew that Ramirez was using his position to proselytize and harass Sedillo, but failed to stop Ramirez from doing so, are also not substantiated, the Court concludes that judgment should be granted in favor of Chavez on Sedillo's § 1983 claims against Chavez.

Based upon the foregoing, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Defendants Ramirez and Chavez were employed by the State of New Mexico Corrections Department – Probation and Parole Division – at all pertinent times.

3

2.  Both Defendants are sued only in their personal capacities under 42 U.S.C. § 1983.

3.  Ramirez supervised Sedillo under an Intensive Supervision Program ("ISP") from June 13, 2003, until Sedillo breached his parole agreement and absconded from parole on December 18, 2003 after he refused to submit to a urinalysis, and after having previously tested positive for cocaine use on November 3rd and 10th.

4.  Sedillo does not challenge the propriety of his parole revocation, which was based on his failure to report for ISP contacts, testing positive for cocaine use, and because of his indictment on charges of fraudulent use of a credit charge based on events occurring in June, 2003, while Sedillo was on parole.

5.  After a few weeks of ISP supervision with Ramirez, Sedillo wore a "satanist" tee shirt and pentagram to his contact visit with Ramirez.  The shirt depicted "vestal masturbation" and stated, "Jesus is a Cunt."

6.  Ramirez told Sedillo he could not wear such a shirt to the probation/parole office or that he had to cover it up while he was there because it could easily provoke other parolees/probationers to violence against him.

7.  During the first few weeks of his ISP supervision, Sedillo came to the ISP office wearing earphones and listening to satanic music that could be heard despite the earphones.

8.  Ramirez told Sedillo that he could not come into the probation/parole office listening to loud music because Sedillo would not be able to hear if dangerous situations were occurring in the office, which also supervised gang members or other potentially dangerous individuals who had committed felonies.

9.  As they were leaving after that ISP visit in July 2003, Sedillo was arguing with Ramirez about not being allowed to listen to his music at the office and Ramirez and Sedillo went by

4

Chavez's office; Ramirez told Sedillo that Chavez was Ramirez's supervisor; Ramirez asked Chavez if she had ever heard satanic music; and Chavez responded that she had not and briefly listened to it.

10.  At no time during the three ISP visits with Chavez (on 8/14/03, 9/2/03 and 9/15/03), or with other parole officers, did Sedillo ever state that he was a satanist or complain that Ramirez was harassing him or "preaching" to him about christianity.

11.  Sedillo never complained about Ramirez until January 2004, after Sedillo had been arrested for absconding his parole, and Sedillo complained only that he felt that Ramirez had not been fair to him during the parole process – a claim which Chavez investigated and found to be unsupported in the parole record.

12.  Ramirez kept a bible in his office desk, which he occasionally read during his breaks, and which Sedillo saw at least once on the top of Ramirez's desk.  Ramirez and Sedillo briefly talked about their beliefs when Sedillo asked Ramirez a question, but Ramirez did not proselytize, attempt to convert Sedillo to christianity, or harass Sedillo about his involvement in satanism.

13.  Beginning at the end of June, Sedillo failed to report for ISP visits twice; Ramirez discovered that Sedillo's girlfriend was also a felon on probation; Sedillo's electronic bracelet indicated to Ramirez that Sedillo may be associating with other felony parolees or probationers who were being monitored; Sedillo was a suspect with his girlfriend and sister in a credit-card fraud incident involving Sedillo's ex-wife; and Sedillo began to look pale with bags under his eyes and had tested positive for cocaine, so Ramirez asked Sedillo at one of the ISP visits whether Sedillo thought that being involved in satanism was conducive to healthy conduct in Sedillo's life because Ramirez could see evidence of Sedillo's "unraveling."

14.  Defendant Chavez was never informed that Sedillo is a satanist and Sedillo never told

her that Ramirez allegedly harassed him because of his satanist belief or preached to him about christianity or attempted to proselytize him.

### Conclusions of Law

1. Ramirez did not violate the Free-Exercise-of-Religion Clause or the Freedom-of-Speech Clause of the First Amendment to the United States Constitution because Ramirez did not harass or otherwise put substantial pressure on Sedillo to modify or to violate his beliefs in satanism or cause him not to freely express those beliefs in any way other than to cover his provocative tee-shirt because of compelling safety reasons while Sedillo was in the probation/parole office, which was a reasonable and minimal restriction or limitation on Sedillo's right to freedom of expression.

2. Ramirez did not violate the Establishment Clause of the First Amendment because he did not attempt to proselytize or convert Sedillo to christianity, coerce him to participate in a religious exercise, or supervise Sedillo in a way demonstrating that Ramirez preferred "religion to irreligion." *Bd. of Educ. of Kiryas Joel v. Grumet*, 512 U.S. 687, 704 (1994).

3. Judgment shall be entered in favor of Ramirez and Chavez and against Sedillo.

UNITED STATES DISTRICT JUDGE